25-1056, Southern Iowa, Goldfinch Laboratory, P.C. v. Iowa Pathology Associates, P.C. et al. Mr. Beard? Good morning, Your Honors. Before I begin my argument, I want to make a personal statement to Judge Arnold. I am totally moved to be here this morning before Your Honor because 45 years ago, I had the privilege of arguing the last case that your brother, Richard Arnold, heard while he was still on the district court in Little Rock. He had already been appointed to the Court of Appeals, and the case was assigned to him. I think he found it so interesting that he heard the case even though he had already been appointed to the Court of Appeals. It was one of the great honors of my career to have appeared before him, and now 45 years later, actually 45 and a half years later, I'm here before his brother, Your Honor, and it's just a very moving experience for me. Thank you so much. I appreciate that. I think of him often. May it please the Court, good morning. Jack Berig for Appellant Goldfinch Laboratory. The dismissal of the complaint in this case on a motion to dismiss is directly contrary to the decision of this Court in International Travel Arrangers v. Western Airlines and to other controlling precedent. Let me briefly set forth the facts to explain why. Until February 1, 2023, Iowa Pathology Associates was the only independent pathology practice offering general pathology and dermatology, dermatopathology services in Central Iowa. As such, together with its related corporation, RLC, it was able to charge super competitive fees for their services. Moreover, it had absolutely no incentive to improve the quality, such as by reducing turnaround time or improving the quality. That's throwing a lot of well-known antitrust terms around that the facts, in my view, don't necessarily support. Super competitive, I mean, you can argue all day about that. Well, when your own people tell you that you're at the top 1% of fees in the United States, or you've got 400% when you're charging certain hospitals, that would be super competitive. You know, that sounds good, but let's start with antitrust injury, statutory standing. What's your best circuit case applying Associated General Contractors for this case? It's International Travelers, Your Honor, on standing. Was that an antitrust standing case? Yes, it was. I don't even see it in the table of authorities. It's all over the reply brief. It's the whole thing of the reply brief. I urge you to read it, Your Honor. It was a case where a would-be competitor, International Travel, was seen as a competitive threat by Western Airlines. Western Airlines engaged in all sorts of false and deceptive statements to referral sources, and so International Travelers sued, and 8th Circuit, the Court of Appeals, in 1980, specifically held that they had standing, even though they were not a competitor. There's an awful lot of Section 2 water over the dam since 1980. Yes, but there has been no, in Aretha and Holden Camp. And that was pre-Associated Contractors, so when you say it's associated all over. Associated General Contractors says that competitors have standing. You just said that International Travelers discussed Associated Contractors. No, I didn't say it discussed it. I said it's consistent with it. I'm sorry. And I also would say, Your Honor, that Aretha and Holden Camp in their antitrust treatise, which I would urge the Court to take a look at, which is, you know, right up to date, says that competitors, would-be competitors. That was my antitrust professor. That was my antitrust professor, too. I assume you're talking about Aretha. It was one of my favorite courses in law school. But Aretha and Holden Camp specifically say, and we quote the language, that a competitor who is seeking to inject competition in the market and actually has various tortious and unfair practices used against it to prevent it from competing, they have standing to bring the case. I urge, Your Honor, to read Aretha and Holden Camp and also to read the decision of this case and several others. They're cited in a brief. When monopolization became almost impossible to prove, as the Supreme Court defined it- I don't believe that attempt to monopolize is almost impossible to prove. So attempt to monopolize became the garden variety section 2 case. And where in your complaint are the elements of attempt to monopolize alleged? In several places where we state all the unfair practices and deceptive statements that were made to referral sources in order to induce these referral sources, not to make referrals to the only competitor in the relevant market.  What are your best cases supporting your geographic market definition? Our best cases- well, first of all, let me address the case that is most- that is relied upon most heavily by the defendant. And that is the Parr v. Wolf Clinic case. Okay? In Parr v. Wolf Clinic. Hang on one second. I don't want to dissect- I don't want to hear your dissection of their cases. Because I didn't find very many cases that rang a bell to me in the briefs for appellant. Okay, well- Other than on glittering generalities. I think we cited specific cases, Your Honor. And the- you're asking about- About the geographic market. You're asking about the geographic market. Okay, let me- Your best case. Best Supreme Court case and then a circuit case. I think the best Supreme- I can't tell you what the best Supreme Court case is. But I can tell you that the decision of this court in the International Travel Arrangers case is a very good case because it demonstrates that, as we say in the brief, that the question is whether- how shall I put this? Whether there's some harm, some demonstrable harm in a relevant market. And there were lots of alternatives that could have been used in that case. But the court found that the relevant geographic market there basically was a relevant geographic market. I want to address what the Eighth Circuit rule is. The Eighth Circuit rule in Par v. Wolf Clinic, which Judge Glendert was on the panel of, basically says that whether a plaintiff alleged a proper geographic market depends on whether, A, it is an area in which the defendant draws a sufficiently large percentage of business. There is no question that the defendant, IPA, basically drew a tremendous percentage of its business from referral sources in the central Iowa. And, B, is it a geographic area in which only a small percentage of purchasers have alternative suppliers to whom they could practically turn if the defendant's anti-competitive action resulted in a price increase? Well, that's exactly what happened. We allege that there are essentially no alternative suppliers that the referral sources could practically turn because physician groups and hospitals that want to send pathology specimens want to use pathologists who are basically very near where they are for two reasons. One, they want to give the court a turnaround time, and they want to deal with... You know, customer desire, that's not the basis for no alternative source. They can go out of state. Actually, the question is, if you read the Par decision... Read the what? The decision of this case in Par v. Wolf Clinic, the decision of this court, rather, here, what the test that the court applied, that the district court applied, was whether referral sources are, quote, practically incapable of sending specimens outside. That's not the test that was of this court in the Par v. Wolf Clinic case. It's not a question of what they're practically incapable of. Incapable is not the issue. The issue is, what do they do? And it is... And the fact of the matter is, if you look at what really happens in this case, despite the fact that they were charging... Excuse me, that IPA was charging super competitive prices, despite that fact, none of these people were able or decided, none of these referral sources turned to potential pathologists in Minnesota or in Nebraska or wherever they might be. They wanted to, and it was important to them, to have pathologists who they knew, who were close by, that they could talk to without any problems. And the court misapplied the... Home field advantage doesn't make you a monopolist. It's more than home field advantage. It's what the referral sources wanted. And here's the other thing, Your Honor, that I think you're overlooking. It's not unlike the pacemaker salesman cases. All we, what we are asking for is the opportunity to demonstrate factually that Central Iowa is a relevant market. The court basically said, we think this is an implausible market. But that's not what's supposed to happen on a motion to dismiss. There's supposed to be discovery. There's supposed to be an opportunity to demonstrate to the court why the alleged geographic market is a relevant market. But what's your best case that would approve such a vague description of the relevant market as Central Iowa? What's our best case? Well, there's no case that deals specifically with Central Iowa, but there are a number of cases... I understand that. Give me one that approved a vague, what I consider to be a vague definition of what the market is. There are several cases that are cited in the brief. I can't give them to you, but if you look at our brief, you'll see a number of cases, Your Honor. I'm sorry that I can't tell you them off the top of my head. But the law is clear that market definition should not generally be decided on a motion to dismiss. Rather, the plaintiff, who is saying what the relevant market is, should be given the opportunity to bring forth facts which show what the relevant geographic market is. We do have cases, Counsel, that refer to our cases saying that in this particular procedural posture, it's usually not a good idea to dismiss the case without some opportunity for discovery. But in this case, dismissal was proper. That's what the court said. I'm sorry. Go ahead. No, the court said, well, in this case, dismissal, this is an improbable or relevant market. But that's not what's supposed to happen. And she never says why. What's that? We do have cases that allow that. Yeah. How do we know? How do we tell the difference? Okay. We tell the difference by what the plaintiff is saying. Okay? So in Parr, for example, the plaintiff first alleged it didn't even have to prove any relevant market because it was anti-competitive. And then it changed to a different relevant market, which the court dismissed. And then it said Central Iowa is the relevant market. But it also, at the same time, said that there were ophthalmologists all over the state of Iowa that were available to do this. So its own pleading basically made it ridiculous for him to say he pleaded himself out of court. Right, he pleaded himself out of court. Here we say that there are no other practical alternatives for referral sources for physicians, for hospitals to send dermatopathology specimens and general pathology specimens. Can you give me a paragraph where you actually say that? Because I recall it being more of a preference pleading that they prefer, not that there's no practical alternatives outside of Central Iowa. We did say they prefer. We did say that, Your Honor. But the fact, you know, we didn't realize that the... You just said we pled there's no practical alternatives outside of Central Iowa. And I'd like a paragraph that says that. Well, what we did in paragraph 12 of our complaint, basically we said that there are pathologists at the University of Iowa, but they don't take any other cases. And there's another group that doesn't take cases from referral sources. We did not specifically say that there are no other sources that could be used, but that was implicit in what we said. And what's more, if we didn't say it exactly, I think the proper thing for the judge to have done would have been to say file an amended complaint where you make the kind of statement, Your Honor, that you're just talking about. I've only got one minute, so I'd like to reserve my time, if I may, unless you want me to continue. I hope I've answered your questions. Thank you, Your Honor. Ms. Lindberg? May it please the court and counsel, my name is Jennifer Lindberg, and I represent Iowa Pathology Associates and Regional Laboratory Consultants. As a threshold matter, Goldfinch simply did not plead an antitrust injury. Thus, they do not have standing. You need look no further than that analysis. But additionally, Goldfinch did not plead a plausible geographic market. The alleged geographic market as pled was largely undefined and otherwise implausibly narrow. You need not look into the international travel case that counsel cited. I would question the motives, as Judge Loken pointed out, it wasn't addressed in their opening brief and it wasn't addressed at all at the district court level. You need look no further than Parr v. Wolf Clinic, which this court has already decided is based on strikingly similar facts, and thus you should affirm the district court's ruling dismissing each and every one of the allegations.              Goldfinch is currently competing in the marketplace. Perhaps maybe not as much as they would like to, but that certainly is not the legal threshold for you all to consider. Now, Goldfinch argues that any competitive... So why wouldn't anti-competitive behavior that caused lost profits, why wouldn't that be sufficient for standing? Well, I think, Your Honor, if you look at Parr, the judge at the lower court, which you were on the panel, you affirm dealt with strikingly similar fact patterns there. Dr. Parr alleged that the former practice said they didn't know where Dr. Parr was practicing. He was alleged to have lost some referrals and that there were some allegedly false defamatory statements. Those are essentially the allegations here. And in that court, you determined those were injuries to a competitor, but not to the marketplace here, right? There was no allegation that these statements impacted the quality of services in the market or the prices in the market after Goldfinch was entering. And the district court actually, in the opinion in Parr, said that making life difficult for one particular competitor in the absence of conduct that otherwise affects the market simply does not give rise to antitrust injury. That is not what those laws are intended for. So thus, it is our position that having suffered no antitrust injury, they have no standing before you today. I would like to talk, as you did with counsel, about the failure to plead a relevant geographic market under the monopoly claims. The district court properly determined that the... I want to come back. This strikes me as a potential attempt to monopolize case. I don't see in the... I don't see in the briefs reference to antitrust injury and the attempts to monopolize context. Are there any? No, there are not, Your Honor. They've argued this theory that they've alleged that we... Goldfinch has argued that IPA is its only competitor. If you can satisfy the rigorous standards for an attempt to monopolize claim, can that give you standing? Well, here, I would say no. The proposition that they... Well, they didn't plead it. It wasn't before the lower court. I can't find anything in the pleadings that brings us right to the point of the rigorous attempt to monopolize cases that the Supreme Court has said govern this. We would agree with you, Your Honor. The alleged injuries, again, are loss of some referral sources, not all, right? Isn't that what establishes the no antitrust injury? That they have not sufficiently pled a viable attempt to monopolize claim. And that is correct, Your Honor. On appeal, they focused on the geographic market element of the monopolization. At the district court level, she did not even address any of the... That doesn't get you the attempt to monopolize. Correct. You've got to have significant monopoly power and an evil intent to expand it by doing something that injures. Correct. And that's simply not addressed at all in their allegations. But talking further about the geographic market issue, there was some discussion with counsel about the lack of... the lack of allegations regarding practical alternative suppliers, which is kind of the second part of the test when you're looking at a geographic market. And Goldfinch, in their brief, and here again today, has argued that paragraph 12 of the complaint somehow alleges no practical alternative suppliers. As in response to your question, Your Honor, that is simply not what paragraph 12 says. You know, Goldfinch talks about the University of Iowa pathologists largely confining their practice there and providing very few services, but they don't affirmatively state that the University of Iowa providers are not a practical alternative supplier. They provide no authority for that position, nor does that paragraph state or allege that there are, in fact, no practical alternative suppliers. So the district court also determined it is simply not plausible that there are no practical alternative suppliers when you consider just the fact that Goldfinch pled that the specimens travel in interstate commerce, but they don't plead why the providers in central Iowa could not then therefore take advantage of that remote service. And as you've talked to counsel about, they conflate a personal preference of where to send samples, allegedly to Goldfinch, certainly, with the required practical alternatives. You've rejected that in par, and you've rejected that in the Bathke versus Casey's cases where it talked about where customers want to get gas versus where they could get gas. And the practical alternative requirement that was imposed by the district court is, in fact, such a requirement that traces back to the Little Rock case out of this circuit. And the Little Rock case recites to the Tampa Electric case out of the Supreme Court and also a Morgenstern case out of the Eighth Circuit. That is a requirement and that needed to be pled. And additionally on that point, not to reiterate myself here, but they admitted both to this court today and in their complaint, or excuse me, their brief, your honor, why they don't allege why potential referral sources are unable to send specimens to areas outside of Iowa. They've said in their briefing and they've said before you today that it should not be required to do that at a motion to dismiss stage. And there is no legal support for that proposition because it is wrong. There is no per se prohibition against dismissal at this stage in the case. This court has done that in Little Rock. They've done that in par, and they've dismissed in Double D versus spotting as well. And I think council had briefed that additional discovery is needed. They've put in their brief all these additional facts that they would need and they've argued some before you today. And the district court correctly found that the physicians in Goldfinch were in fact IPA. They pled that. They used to work there. There is no information that they would gain in discovery that they do not already have. And the standard for kind of repleting in Double D the court cited will oftentimes in these cases, the proof of illegality is in the hands of plaintiff if you're looking into separate or corporate entities that are not them. But here that concern is not present because they were IPA and they did know that discovery would not remedy their issues. I would also just briefly argue that the Section 1 claim was properly dismissed under Copperwall. They barely discussed that in their briefing because they did not plead that IPA and RLC are separate economic actors and thus they cannot conspire. They did not plead or I was speaking too fast, Your Honor, that IPA and RLC are separate economic actors. Thus, they cannot conspire under Section 1 and that claim was properly dismissed. And also finally, just to conclude unless anyone has questions, motion for leave to amend was properly denied. That is an abuse of discretion standard. They never actually moved for leave to amend as required under the local rules and therefore, you should uphold, excuse me, Judge Eminger's decision to deny their inappropriate requests for leave. Well, we don't have an amended, proposed amended pleading, do we? That's correct. They never filed a motion seeking leave to amend nor did they file electronically as required under Local Rule 15 what that would be. Did they say what they wanted to do, how they amended the complaint would cure the Sherman Section 1 deficiency? The only, so, did he submit an oral representation at argument that he would like to amend if the court would so allow him and then he submitted a letter to the court which described only what they think Central Iowa would look like but at no point in the briefing have they alleged anything that would resolve the dismissal of the Copperwell claim. Well, with some hard work it wouldn't be very hard to find another, another co-conspirator in a Section 1, in this Section 1 situation even if intra-corporate conspiracy doctrine doesn't get them past that. Well, in respect of the order here they did not. Well, they'd have to find a find and embarrass a customer that would be willing to Potentially, Your Honor. Not willing that they could dare sue. Well, and hypothetically perhaps but here again they simply have not. So, I have nothing further unless you have questions for me. Thank you. Thank you. Your Honor, I'd just like to emphasize we're here on a motion to dismiss. The Supreme Court in Twombly and Iqbal said that all you have to do is give specific some specific facts which and not generalizations which support your claim. We gave all sorts of specific facts as to what IPA and its related but separate corporation did in order to cripple the ability of Goldfinch to compete. I think we've more than satisfied the Twombly and Iqbal test. As for evil intent the fact that they wanted to get these people the people who formed Goldfinch to sign covenants not to compete within 25 mile radius certainly shows that they're trying to prevent competition. As to the fact that they say well these torts that they've committed these unfair practices do not constitute antitrust violations that would have been correct if there were several competitors in the market but here Goldfinch was the only competitor the only competitor in the geographic market and as soon as they found out as soon as IPA and RLC found out about it they did everything they could to cripple our ability to  or to drive us out of business. They engaged in specific false statements and unfair practices. They locked us they locked the Goldfinch pathologists out of their office to try to prevent any kind of relationship with referral sources. They made totally false statements about the ability of Goldfinch to service the clients. When I listen to Ms. Lindberg it sounds like she's arguing a motion for summary judgment but if our complaint was somehow deficient the law is clear that unless a motion to dismiss excuse me unless an amended complaint was made for delayed purposes or in bad faith it should be granted. Our law is not clear at all on that. Especially recent law. We emphasize over and over again that you've got to move for leave to amend you've got to submit a motion to    pleading and if it's post judgment it's likely going to be denied. Well we asked the court at the oral argument on the motion to dismiss we said if the court finds there's anything deficient we would like to have the ability to amend   We have said numerous times that ain't good enough. You don't ask the judge to do your work for you. We weren't asking the judge to do our work. We have multiple cases and I think you probably have read them where the request for leave to amend was  then it was we had already asked and the court specifically said I am not granting you leave to amend. She specifically said that in her ruling. So it didn't seem like it was appropriate. Once she says I am not granting you leave to amend that seems to be the end of the case. But just to raise one more point that I think your Honor should recognize is we have basically said we have alleged that Goldfinch was the only competitor of IPA and RLC. And by the way, in this international travelers case that I mentioned, there was found to be a  between Western Airlines, the monopolist, and its advertising agency. She was the only competitor in this little niche. You did have the university. They were not a competitor.  confined their work. As you defined it. Today, orally, they weren't a competitor. They were not a  That's what we tried to say in the complaint. I don't think the law should hinge on whether we used the exact right words. The basic point is we have said, and I'm saying again today, that Goldfinch was the only practical competitor of IPA in the market for dermatopathology services and pathology services. The district court said standing alone that's not plausible. Yeah, without giving us a chance to make any kind of factual showing. On a motion to  as I said. You had all the arguments on the table when you made your request, right? Not you. It was me. Yeah, we had our arguments on the table and we basically said, we told the court what IPA was doing to try to cripple us or prevent us from competing. They even sued to prevent it. Okay, just to wrap it up, I think your time's up. I'm sorry, your honor. Thank you very much. It's a long morning and day.  The case has been thoroughly briefed and argued and we will take it under advisement.